IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **STEVE BUTTS** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 10-3244** |
| | * | |
| **ENCORE MARKETING INTERNATIONAL** | * | |
| | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Steve Butts, proceeding *pro se*, has sued Encore Marketing, Inc. ("Encore"), his former employer, alleging violations of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*, and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.*[1] On December 21, 2010, Encore filed a Motion to Dismiss and, after the case was stayed for several months, Butts filed an opposition. For the following reasons, the Court **GRANTS** Encore's Motion.

I.

A.

The facts set forth in the Complaint, viewed in the light most favorable to Butts, are as follows:

In December 2007, Butts, as employee of Encore, attended the firm's annual Christmas party. At some point during the party, Tom Deliso, the Vice President of Encore, demanded that Butts "submit to a homosexual relationship" with him. Deliso asked in a boisterous voice

---

[1] Although Butts cites the "Maryland Human Rights Act," he presumably intends to invoke the FEPA, which like Title VII proscribes discriminatory employment practices. *See Alexander v. Marriott Int'l, Inc.*, No. RWT 09-cv2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011) (presuming that plaintiff who cited former version of Maryland's anti-discrimination statute was attempting to state a claim under the current version of FEPA).

1

whether Butts "preferred to be on top or to be on bottom." Many Encore employees overheard these remarks, including Felicia Watkins-White, the Director of Human Resources at Encore. Although Watkins-White attempted to intervene at the party and was aware of the emotional impact the remarks had on Butts, no disciplinary action was taken against Deliso.

Following the incident at the 2007 Christmas party, Butts was subjected to increased "workplace hostility" from his immediate superior at Encore, Carolleen Hunt, who was a friend of Deliso. While traveling to the Encore Christmas party the following year, Hunt threatened to fire Butts if he did anything to "embarrass her." In mid-2009, Butts reported to Lisa Frison, the company's Vice President of Operations and Hunt's supervisor, that Hunt had falsified various documents to inflate production statistics. Frison relayed the problem to Executive Vice President Mati Otsmaa and Watkins-White, who determined through an investigation that Hunt had violated the Encore Code of Conduct Regulations and issued a Formal Warning to Hunt. After receiving the Warning, Hunt made it clear that she blamed Butts for the sanction. Hunt commented in the presence of several employees, "[we] all have issues with people going behind our backs" and "[we] should practice what we preach," and Butts believed Hunt was referring to the complaint he had filed against her.

On a weekly basis, Frison and Watkins-White discussed Hunt's conduct, problems with the workplace environment, and continued "retaliation" against Butts and other employees. Hunt was eventually directed to attend two courses and counseling aimed at decreasing her hostility toward Butts and other subordinates, and as well was "instructed" to "resist all forms of retaliation [and] harassment" against Butts. Nonetheless, after a brief period, Hunt renewed her harassment, including "open hostility, yelling[,] and demeaning characterizations." According to Butts, Hunt "routinely demeaned his manhood [and] humiliated him in the workplace in front of

his peers [and] subordinates." Butts told Frison that Hunt's conduct was "in retaliation" for having made complaints about her. Hunt also tried, albeit unsuccessfully, to prevent Butts from taking a third week of vacation, which was specifically provided for in his employment contract. Butts concluded that Hunt "acted for the purpose of driving him from workplace."

In December 2009, after another investigation and consultation with Otsmaa and Watkins-White, Frison decided to issue Hunt a second Formal Warning. Hunt, however, refused to meet with Frison to accept the Warning because she had learned from senior Encore management that both Frison and Otsmaa were to be "laid off." On January 7, 2010, Hunt gathered the employees under her supervision together and passed along this information.

After Frison and Otsmaa were fired, Deliso became Hunt's supervisor, making him Butts's second tier supervisor. With the senior manager who had allegedly sexually harassed him in a position of direct authority, Butts gave notice that his working conditions were intolerable and quit his employment at Encore.

**B.**

On July 8, 2010, Butts filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging:

> On or about December 22, 2007, I was verbally sexually harassed by Tom Deliso. This verbal solicitation was witness[ed] by other employees, including the Director, Human Resources, Fel[icia] Watkins-White. She redirect[ed] Mr. Deliso['s] unsolicited sexual overtures away from me. No disciplinary action was taken against him. On or about July 2009, I reported to upper management about Carolleen Hunt, Director[,] submitting false information to clients about the service level in order to improve the production statistics and increase the [billing]. An investigation was conducted and Ms. Hunt was found guilty. Ms. Hunt was given a formal warning about her action, which could lead to termination. Ms. Hunt made my work environment very hostile. On January 20, 2009, I reported her actions to higher management again. Ms. Hunt was given a second formal warning. In December 2009, it became obvious that Ms. Hunt's disparate treatment towards me was not going to stop and my employer was not going to do anything to discipline Ms. Hunt. My working environment became so hostile and stressful that I was forced to resign on March 19, 2010.

3

After receiving a Right to Sue Letter from the EEOC, Butts filed the instant action alleging violations of FEPA (Count I) and Title VII (Count II), including constructive discharge (Count III). On December 21, 2010, Encore filed a Motion to Dismiss for failure to state a claim upon which relief can be granted.

## II.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). But the court need not accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Id*. There must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient well-pled facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The factual allegations must "permit the court to infer more than the mere possibility of misconduct." *Iqbal,* 129 S. Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A plaintiff proceeding *pro se* is held to a "'less stringent'" standard than is a lawyer, and the court must construe his claims liberally, no matter how "'inartfully pleaded.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, even a *pro se* plaintiff is not exempt from the requirement that his complaint contain more than mere "'labels and conclusions'" or "'a formulaic recitation of the elements of

[a] cause of action.'" *Walden v. Allstate Ins. Co.*, 388 F. App'x 223, 224 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. 555).

### III.

Butts alleges that Hunt and Deliso, as agents of Encore, openly discriminated against him and sexually harassed him in violation of Title VII and FEPA. Encore counters that Butts has not alleged facts sufficient to support his discrimination claims. The Court agrees with Encore and will dismiss Counts I and II.

### A.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a claim for sexual harassment in the workplace, a plaintiff must show that the alleged harassment (1) was unwelcome, (2) was based on his sex, (3) was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment, and (4) was imputable to his employer. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). Harassment that occurs between two individuals of the same sex is actionable under Title VII. *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998).

In determining whether a work environment is sufficiently hostile, the Court examines "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Conduct that is not severe or pervasive enough to create an objectively hostile or

abusive work environment—an environment that a reasonable person would not find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21. A single comment, even if inappropriate, cannot form the basis for a claim. *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 339-40 (4th Cir. 2006) (holding that a single racist statement was not enough to establish a hostile workplace environment). This rather exacting standard ensures that "Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale*, 523 U.S. at 80). "[C]omplaints premised on nothing more than 'rude treatment by [coworkers],' 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor,' are not actionable under Title VII." *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (citations omitted).

In this case, Butts has not alleged facts sufficient to establish a gender-based hostile work environment. His Complaint raises only two examples of sexual harassment. First, he asserts that at the 2007 Encore Christmas Party Vice President Deliso demanded that he "submit to a homosexual relationship" and then asked him whether he "preferred to be on top or to be on the bottom." Second, Butts maintains that in 2009 Hunt "routinely demeaned his manhood [and] humiliated him in the workplace in front of his peers [and] subordinates." These allegations fall short of satisfying the third element of Butts's prima facie case—alteration of the terms and conditions of his employment. The two examples involve different alleged harassers, different types of verbal harassment, and occurred more than a year apart. Butts has not claimed that they were related to create a larger pattern of harassment. *Cf. Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (allegations that one supervisor made repeated demands for sexual favors and also fondled plaintiff in front of other employees sufficient to state a claim for hostile work environment).

With respect to Deliso specifically, Butts has not asserted that the Vice President accosted him after the 2007 Christmas party to try to initiate a homosexual relationship. While the alleged solicitation may have happened once, as a single incident of verbal harassment, it cannot, without more, form the basis for a claim under Title VII. *See Jordan*, 458 F.3d at 339-40; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.").

Although Butts alleges that Hunt, in contrast to Deliso, made offensive remarks on a routine basis, this allegation also fails to establish actionable harassment. He provides no specific examples of Hunt's purported misconduct. Simply stating that Hunt "demeaned his manhood" and "humiliated him" does not indicate the severity of the alleged remarks, how precisely they cast aspersions on his sexuality, their impact, and the context in which they were uttered. *See Oncale*, 523 U.S. at 81 (noting that inquiry into whether conduct creates a hostile work environment "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target"); *see also Blount v. Thompson*, 400 F. Supp. 2d 838, 843 (D. Md. 2004) (finding public ridicule and offensive conduct insufficient to create a hostile environment under Title VII). Indeed, Butts does not appear to contend that Hunt's sex-based harassment interfered with his work performance. *Cf. Fox v. General Motors Corp.*, 247 F.3d 169, 179 (4th Cir. 2001) (finding actionable hostile work environment where managers berated plaintiff on weekly basis, neglected to provide him necessary materials to complete his job, and exposed him to physical harm at work). As they stand, Butts's allegations are too vague and conclusory to push his claim across the threshold of plausibility. *See Showell v. Bd. of Educ. of Wicomico Cnty.*, No. RDB-10-03477, 2011 WL 5877220, at *12 (D. Md. Nov. 22, 2011)

(dismissing hostile work environment claim where plaintiff alleged that he was subject to intimidation and was harassed on multiple occasions but failed to provide concrete examples of these abusive practices and made only conclusory statements as to the hostile conduct); *Finnegan v. Dep't of Pub. Safety & Correctional Servs.*, 184 F. Supp. 2d 457, 462-63 (D. Md. 2002) (finding that although plaintiff alleged she was verbally abused for several months, dismissal of her complaint was warranted because she provided few specific examples and never asserted that the comments or reprimands were physically threatening or interfered with her work performance); *cf. Ensko v. Howard Cnty.*, No. WDQ-04-03464, 2005 WL 1367084, at *4 (D. Md. June 7, 2005) (finding plaintiff had stated a claim for hostile work environment against County defendant where she alleged that she was continuously subjected to comments regarding sexual encounters and the display of pornographic material).

Furthermore, Butts has not shown that, but for being male, Hunt would not have targeted him. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000) ("An employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of discrimination." (citing *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 142 (4th Cir. 1996))). To the contrary, the Complaint makes clear that Hunt harbored significant animus against Butts for reporting to Encore management that she had falsified documents. Hunt held Butts responsible for the Formal Warning that Watkins-White and Otsmaa issued to her as a result of their investigation, and Butts himself believed that her conduct was "retaliation." Butts says that Hunt commented in the presence of several employees, "[we] all have issues with people going behind our backs." But this statement, if made, is not gender specific.[2] *See Hartsell v. Duplex Prods., Inc.*, 123 F.3d

---

[2] There is no evidence, for example, that Hunt made derogatory comments about men in general. *Cf. Equal Emp't Opportunity Comm'n v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175-76 (4th Cir. 2009) (finding that co-workers'

766, 772 (4th Cir. 1997) ("[O]nly harassment that occurs because of the victim's gender is actionable.").

Butts attempts to salvage his Title VII claim by making new allegations in his Opposition to Encore's Motion to Dismiss. Specifically, he claims that from December 2007 to 2009 Deliso made "sexually oriented comments [and] gestures" at him "in front of other employees." Butts may not, however, by mere assertion transform what his Complaint and EEOC charge described as a single instance of solicitation into a pattern of harassment that lasted for months. He is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (citations omitted). The Court will not consider Butts's newly minted factual claims about Deliso's supposed continued harassment.[3]

In sum, Butts has not stated a claim for sexual harassment upon which relief can be granted, and the Court will dismiss Count I.[4]

**B.**

Butts cannot escape his failure to state a claim by alternatively seeking relief under FEPA for the same alleged discrimination. Like Title VII, FEPA makes it unlawful for an employer to "discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . the individual's race, color, religion, sex,

---

repeated use of the word "bitch" when referring to women was evidence from which a reasonable jury could find that plaintiff suffered harassment on the basis of sex).

[3] The fact that Butts never included this allegation in his charge of discrimination to the EEOC lends further support to the Court's conclusion. "The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) (citing *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976)).

[4] The Court does not question whether Butts may have had a difficult time of it at Encore. Whatever verbal abuse he might have suffered there, however, does not entitle him under federal law to money damages for sex-based discrimination.

9

. . . [or] national origin . . . ."[5] Md. Code Ann., State Gov't § 20-606(a)(1).  Given the similarity between the statutory schemes, courts have described Title VII as "the federal analog" to the Maryland statute, *see Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007), and have looked to Title VII case law in adjudicating FEPA claims.  *See, e.g.*, *Betof v. Suburban Hosp., Inc.*, No. DKC 11-1452, 2012 WL 2564781, at *5 n.7 (D. Md. June 29, 2012).  The standards applicable to Title VII claims apply with equal force to claims under FEPA.  *See, e.g.*, *Brown v. Baltimore Police Dep't*, No. RDB-11-0016, 2011 WL 6415366, at *14 (D. Md. Dec. 21, 2011); *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md. Sept. 28, 2011); *Alexander v. Marriott Int'l, Inc.*, No. RWT 09-cv2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011).  Accordingly, for the reasons just discussed, the Court will dismiss Count II.

**IV.**

Butts's constructive discharge claim in Count III fares no better.  To establish constructive discharge resulting from harassment by a supervisor, a litigant must make a "showing" beyond that required to demonstrate hostile work environment.  *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133-34 (2004).  Hostile work environment is the "lesser included component" of "hostile-environment constructive discharge," *id.* at 149, and "[c]reation of a hostile work environment is a *necessary predicate* to a hostile-environment constructive discharge case."  *Id.* (emphasis added).  Because the Court has already concluded that Butts has failed to state a claim for sexual harassment in the workplace, his "aggravated" or "*graver*"

---

[5] The provision also lists several categories that are not protected under Title VII: "age . . . marital status, sexual orientation, genetic information, or disability unrelated in nature and extent so as to reasonably preclude the performance of the employment." Md. Code Ann., State Gov't § 20-606(a)(1)(i). Plaintiff does not invoke any of these additional protected categories under Maryland law.

constructive discharge claim necessarily fails as well.[6] *Id.* at 146, 149; *see also Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 865 (7th Cir. 2011) ("[Plaintiff's] failure to advance evidence sufficient to find a hostile work environment claim also dooms her constructive discharge claim."); *Nakis v. Potter*, 422 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) ("'[W]ithout an actionable hostile environment claim, [a] plaintiff's constructive discharge claim must also fail.'" (quoting *Ferraro v. Kellwood Co.*, 03 Civ. 8492(SAS), 2004 WL 2646619, at *11 (S.D.N.Y. Nov. 18, 2004))).[7]

## V.

For the foregoing reasons, the Court **GRANTS** Encore's Motion to Dismiss [Paper No. 6] as to all Counts. Final Judgment will be entered in favor of Encore and against Butts.

A separate Order will **ISSUE**.

        /s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**

**August 7, 2012**

---

[6] Butts, in any event, has not alleged facts sufficient to establish the elements of a constructive discharge claim. He has not shown that Encore "deliberately made [his] working conditions 'intolerable in an effort to induce [him] to quit.'" *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995)). Deliso's supposed misconduct at the 2007 Christmas party, combined with Hunt's "open hostility, yelling[,] demeaning characterizations," and attempt to take away Butts's authorized vacation time, does not rise to the level of intolerability. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (affirming dismissal of plaintiff's constructive discharge claim for failure to show intolerable working conditions where plaintiff alleged "that her supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back"). As to deliberateness, Butts concedes that Hunt targeted "other" Encore employees, not just him, and that several Encore managers came to his assistance. For example, Director of Human Resources Watkins-White, Executive Vice-President Otsmaa, and Vice-President of Operations Frison all agreed to issue a Formal Warning to Hunt because of her treatment of Butts. Encore management also directed Hunt to attend courses and counseling aimed at decreasing her hostility toward Butts. An employee is only "protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985), and Butts has simply failed to state a plausible claim for constructive discharge.

[7] To the extent Butts alleges that Encore retaliated against him in violation of Title VII, he again fails to state a claim upon which relief can be granted. He has not shown that Encore took a materially adverse action against him. His vague reference to being overlooked for promotional "opportunities" is not only insufficient; as explained, *supra*, he has not shown that he was constructively discharged. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (setting forth elements of retaliation claim).